FRANK A. HOLMES, Appellant, v. STELLA WINIFRED HOLMES, Appellee.

DIVORCE: Residence—Avoiding Decree for Fraud. A decree of divorce which specifically finds that petitioner was a bona-fide resident of the county in which the action was pending (defendant being a resident of this state) may not be impeached by the naked showing that petitioner, shortly after the decree was entered, *took up her residence in another state.*

JUDGMENT: Application to Set Aside—Sufficiency. Perjury committed on the trial of the material issues of a cause is not sufficient ground for setting aside the judgment after the entry term, and especially when the alleged perjury reaches only to a *part* of the evidence—would only extend the conflict already existing.

JUDGMENT: Application to Set Aside—Sufficiency. An application to set aside a decree for fraud may require a more specific and detailed statement of facts than would be necessary in pleading an ordinary cause of action. *Every* fact should be alleged which will enable the court to say, on the face of the pleading, that the decree is unconscionable, unjust, or inequitable, and that a different result will probably be reached on a retrial.

JUDGMENT: Setting Aside—Extrinsic Perjury.  Perjury, extrinsic or collateral to the material issues tried, may constitute grounds for setting aside a decree.

*Appeal from Fayette District Court.*—W. J. SPRINGER, Judge.

MARCH 16, 1920.

REHEARING DENIED JULY 6, 1920.

ORIGINAL proceeding in equity for the vacation of a judgment and decree in a divorce action, and for a new trial. A demurrer to plaintiff's petition was sustained, and he appeals.—*Affirmed.*

*Bailie & Edson* and *H. E. Tuller,* for appellant.

*E. H. Estey,* for appellee.

STEVENS, J.—I.  It appears from the allegations of plaintiff's petition that he is and has been, at all of the times referred to in this action, a resident of Woodbury County, Iowa; that, on October 5, 1916, he and defendant were married, and lived together until December 1, 1916, and that, on December 25, 1916, she commenced an action against plaintiff in Fayette County for a divorce, upon the ground of cruel and inhuman treatment, such as to endanger her life, based upon the communication to her by plaintiff herein of a venereal disease, from which she became sick and suffered great physical and mental pain and anguish; that, on May 31, 1917, a decree granting the prayer of her petition was entered, which, on the 18th day of February, 1919, was affirmed by this court.  As ground for setting aside said decree and for a new trial, plaintiff herein alleged in his petition that the same was obtained by fraud and perjury.

It is first alleged that defendant, plaintiff in the divorce

action, was not, at the time of commencing same, a bona-
fide resident of Fayette County, but that she was, in truth
and in fact, a resident of Minneapolis, Minnesota, to which
place she returned, shortly after the trial, and where she
has continued to reside; that she went to Fayette
County only for the purpose of obtaining a divorce; that
she was, prior to her marriage, and has been, since her re-
turn to Minneapolis, engaged in teaching music; that de-
fendant appeared in the divorce action, and filed an applica-
tion for a change of venue to Woodbury County, where he
resided, which was overruled; that he specifically denied
in his answer that the plaintiff therein was a resident of
Fayette County.

It is further alleged that defendant herein testified, upon
the trial of said cause, that Drs. Emmons and Pattison
made a physical examination, and informed her that she
was afflicted with a venereal disease; that, since the trial
of said cause, plaintiff has learned that said testimony was
wholly false, and that both of said physicians advised her
to the contrary. The petition further charges that defend-
ant herein employed E. H. Farin in the capacity of a detec-
tive and agent, who, in turn, employed one O. W. Davis to
assist him, to procure testimony on her behalf in the di-
vorce action; that the said Farin and Davis procured one
George M. Hecklin as a witness, who testified that he had
seen plaintiff herein at a roadhouse near Sioux City, in
company with women of questionable character; that Davis
asked him for a prescription for the cure of a venereal
disease, stating that he wanted it for a friend, meaning
the petitioner, who later asked him for a copy of the same
prescription, saying that he had lost the first one; that
the said Hecklin further testified that he saw a Mrs. Davis
going to the room of petitioner in a hotel in Sioux City;
and that the said Hecklin and Davis procured one Edith
Ludvickson, a woman of bad character, to falsely testify
that, while working as a chambermaid in said hotel, she
saw stains upon the bed linen used by plaintiff, indicating
the presence of a filthy disease; that, since the decision

of this court was filed in the divorce action, plaintiff has learned the matters above stated; that Hecklin has admitted that the matters testified to by him were wholly false and untrue; that said admission has been made orally, and in writing under oath, which plaintiff has in his possession; and that the said Hecklin is ready and willing, in case a new trial is granted, to testify that he committed perjury upon the former trial. To this petition, the defendant interposed what amounts to an equitable demurrer.

1. DIVORCE: residence: avoiding decree for fraud.

As already indicated, the jurisdictional question was made an issue in the trial of the divorce action, and the court specifically found that plaintiff was a bona-fide resident of Fayette County, and entitled to maintain her action there. The adjudication in that action is conclusive, except upon the ground of fraud. *Williamson v. Williamson,* 179 Iowa 489; *Bingman v. Clark,* 178 Iowa 1129; *Scott v. Scott,* 174 Iowa 740.

The only matters pleaded in plaintiff's petition tending to impeach defendant's claim that she was a resident of Fayette County in good faith is that she left there shortly after the trial, and resumed her former occupation in Minneapolis, where she has continued to reside. A finding by the court, upon a trial of the issues tendered herein, of the above facts, would not justify the setting aside of the decree and the granting of a new trial. Residence is largely a matter of intention. The statute does not require that the plaintiff in a divorce action reside in this state for any specified length of time, if the defendant is a resident thereof. She need only be a resident of the county in which the action is brought. The defendant had a legal right, in good faith, to change her place of residence, and the mere showing that she returned to Minneapolis, instead of going to some other city, is, in view of her former residence there, material only as tending to throw light upon her intentions at the time she claimed to have become a resident of Fayette County. The court passed upon the question of the good faith of her intentions in the divorce suit, and held that

she was a bona-fide resident thereof. That she returned to Minneapolis and resumed her former position, shortly after the decree was entered, may tend, to some extent, to indicate that the purpose of her coming to Iowa was to obtain a divorce, but is wholly insufficient alone to justify the court in setting aside the judgment for want of jurisdiction to enter same, or upon the ground of fraud.

II. False swearing or perjury upon the

**2. JUDGMENT: application to set aside: sufficiency.** original case is not such fraud as will alone justify the vacation of a judgment and the granting of a new trial upon a petition in equity, filed after the term at which judgment was entered. *Graves v. Graves,* 132 Iowa 199; *Croghan v. Umplebaugh,* 179 Iowa 1187; *Sudbury v. Sudbury,* 179 Iowa 1039; *Kelly v. Cummens,* 143 Iowa 148; *Guth v. Bell,* 153 Iowa 511; *Mengel v. Mengel,* 145 Iowa 737.

Nor will a court of equity interfere to

**3. JUDGMENT: application to set aside: sufficiency.** set aside a judgment upon the application of a party thereto, until it is made reasonably to appear that the judgment is unconscionable, unjust, or inequitable, and that the result would be other or different than that already reached if a new trial were granted. *Bingham v. Clark,* supra.

The testimony given upon the former trial, which it is alleged was false and corruptly procured, is that of the plaintiff in said suit, Hecklin, Davis, and Edith Ludvickson. It is alleged that defendant committed perjury when she testified that Drs. Emmons and Pattison, after a physical examination, advised her that she was afflicted with a venereal disease. So far as disclosed, neither of said physicians was a witness upon the trial, nor is reference made in the petition to the source of petitioner's information that they did not tell plaintiff in said cause what she testified they did, or the character of the evidence relied upon to establish the falsity of her testimony. The mere allegation that, since the trial, petitioner has been informed by some person not mentioned, or learned in some way not stated, that the plaintiff in the divorce action committed

perjury, is not enough. We must presume that evidence was offered upon the trial, tending to corroborate her claim that she was afflicted with a venereal disease, and we cannot presume what other evidence, in addition to her own and that of the witnesses named, was introduced.

If we look only to the petition filed herein, we find nothing to indicate whether medical testimony was offered upon this point or not; but, if we refer to the opinion of this court cited therein, we find that Drs. Ida McKean and Alford both testified that, upon a thorough examination of her, they found plaintiff in the divorce action suffering from the disease claimed. It is not alleged that either Dr. Emmons or Dr. Pattison is willing to testify that plaintiff was free from disease, and, so far as disclosed, testimony, if offered, upon this point would serve only to contradict the testimony of plaintiff, and to some extent weaken the probative value of the testimony of Drs. McKean and Alford. In other words, it would not necessarily establish either that plaintiff committed perjury or that Drs. McKean and Alford are untruthful or mistaken, but only to extend the conflict in the evidence. It is further alleged that the witness Hecklin testified upon the former trial at the instigation and solicitation of Farin and Davis, and, so far as shown, his testimony would be contradicted by both Farin and Davis, and that Davis would not recede from his former testimony. If, however, we again turn from the petition to our former decision, we find that the court apparently gave little weight to the testimony of Hecklin and Davis. While the testimony thereof is referred to at some length, the court characterizes it as unsatisfactory, and recapitulates the credible testimony upon which the affirmance is largely based. The only person named in the petition by whom petitioner expects to prove that perjury was committed upon the trial is Hecklin, who, it is alleged, has confessed in writing that he did commit perjury. Just what has worked the regeneration of this witness does not appear; but it is a long-distance chance that his purpose is sincere, or intended to right a wrong imposed upon the

parties. and the court in the. trial of the divorce case. By this we do not mean to question that the affidavit signed by him and prepared by his attorney was not fairly obtained, as alleged; but neither his written confession nor his testimony, if offered upon a retrial of the divorce action, would probably be given very great weight. We do not agree with the contention of counsel that the written confession of this witness would constitute a high degree of proof.

While it is charged in the petition that the testimony of Edith Ludvickson was corruptly procured by Davis and Farin, the allegations do not disclose that petitioner will be able, upon a retrial, to sustain the same by proof, unless by the testimony of Hecklin. It is not charged that the alleged bad character of the witness was unknown to petitioner at the time of the trial, or that he did not have opportunity of showing same. Her testimony could not have been very persuasive upon the former trial. It may be assumed that same was contradicted by petitioner and that the material circumstances referred to in the petition affording a further contradiction thereof were brought to the attention of the court upon the trial.

But it is insisted by counsel for petitioner that the demurrer, for the purpose of passing upon the sufficiency of the allegations of the petition, admits the truth thereof. But such facts are admitted only as are issuable, relevant, material, and well pleaded. The admission does not extend to the conclusions of the pleader or any matter inhering in the judgment. *Sudbury v. Sudbury*, supra.

A petition in equity for the vacation of a judgment, and for a new trial, is rather in the nature of a showing of merits than the statement of a cause of action, as that term is ordinarily applied. Its purpose is to bring to the attention of the court such facts as, if admitted by a demurrer, would show that the judgment complained of is unconscionable, unjust, or inequitable, and that it is reasonably probable that a retrial of the issues would result differently. The matters relied upon should be charged with sufficient fullness and explicitness to enable the court, in passing

upon a demurrer in conformity with the rule stated, to determine whether the facts admitted thereby call for the intervention of a court of conscience.

As stated by counsel for appellant in argument, it is apparent that petitioner relies primarily upon the written confession of Hecklin and the showing made thereby. If it were conceded that all of the testimony of this witness, together with that of Davis, Farin, and Ludvickson, was wholly false and untrue, the effect of such admission would go no further, upon a trial of the merits, than to remove the same from consideration, unless satisfactory proof was offered that the plaintiff in that case knew of the perjury, or had reasonable grounds to believe the testimony untrue. The elimination of this evidence would not tend to overcome her own or other testimony offered upon the trial as to plaintiff's condition, in the absence of knowledge upon her part that the witnesses testified falsely. Aside from the mere allegation that defendant herein knew that Hecklin, Davis, and Ludvickson were corruptly induced to testify falsely upon the trial, there is nothing to indicate upon what petitioner relies to make proof thereof. Unless plaintiff knew, or at least had reason to believe, that the testimony of these witnesses was false, when offered, the elimination thereof would in no wise weaken the testimony of herself or physicians that she was afflicted with the disease mentioned. As already stated, a mere showing that perjury was committed upon the trial does not entitle the petitioner to a new trial.

The court, in *Graves v. Graves,* supra, quoting from *Pico v. Cohn,* 91 Cal. 129 (25 Pac. 970, 27 Pac. 537), said:

"That a former judgment or decree may be set aside and annulled for some frauds, there can be no question; but it must be a fraud extrinsic or collateral to the questions examined and determined in the action. * * * What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely

keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest. *United States v. Throckmorton,* 98 U. S. 65, 66, and authorities cited. In all such instances, the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but, when he has a trial, he must be prepared to meet and expose perjury then and there."

4. JUDGMENT: setting aside: extrinsic perjury.

The petition does not allege such facts showing extrinsic or collateral fraud in the procurement of the judgment assailed as to entitle petitioner to the relief demanded; and, while the record upon the former appeal presented a most unusual, extraordinary, and unfortunate state of facts and circumstances, the issues were tried, and submitted to a court of large experience, and the record was again carefully examined and scrutinized upon appeal. We are convinced that the facts alleged and admitted by the demurrer do not make a prima-facie showing of fraud in the procurement of the decree, entitling petitioner to the relief demanded, and the demurrer was rightly sustained. The order appealed from is—*Affirmed.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.