WILLIAM R. EDGERLY et ux., appellants, v. LILLIAN M. SHERMAN, appellee.

No. 50179.

(Reported in 107 N.W.2d 72)

JANUARY 11, 1961.

Francis J. Pruss, of Cedar Rapids, for appellants.

W. Howard Smith, of Cedar Rapids, for appellee.

PETERSON, J.—This is an action in equity for rescission of a real-estate contract for the purchase of 180 acres in Linn County. Plaintiffs allege extrinsic fraud in connection with securing the decree in a quieting-title action establishing fee title to the farm in defendant. They claim she failed to deliver to plaintiffs an abstract showing merchantable title. Defendant filed motion to dismiss on the basis that the facts alleged in the rescission petition did not establish extrinsic fraud. The trial court sustained the motion. Plaintiffs appealed.

The substance of appellants' two propositions relied on for reversal is that the court erred in dismissing plaintiffs' petition, since plaintiffs alleged sufficient facts, if proven, to make defendant's title unmerchantable.

Frank L. Williams was the owner of the 180-acre farm involved. He died testate in 1922 and his will was duly probated. Paragraph IV of the will, as probated, provided:

"I give, devise and bequeath to my said wife the use and income of all the real estate that I may die seized of to have and to hold during her natural lifetime, from and after the decease of my said wife than any and all of the real estate to go to my only daughter Lillian M. * to have and to hold during her natural lifetime to go to her heirs thereafter. *"

His wife, Lenora A. Williams, owner of the life estate, died in 1929. She and her daughter, Lillian M. Sherman, defendant herein, occupied the farm until her death. After her mother's death Mrs. Sherman lived on the farm for some years. She then rented it to plaintiffs. They were in possession under lease for several years prior to the commencement of the quieting-title action, and have continued in possession.

In 1959 Mrs. Sherman was advised it would be necessary for her to quiet title. It was discovered that after her father executed his will, he made a change without re-executing the will before new witnesses. In his will as first executed, Paragraph IV stated after the words " 'Lillian M.' " the words " 'and her heirs forever.' "

As part of the evidence supporting the change it appears the will was written on a black ribbon typewriter. However, the new last sentence was written on a purple ribbon typewriter. The abstracter noted this change by enclosing the newly inserted clause on the abstract in asterisks.

These facts were all alleged in the quieting-title petition. The primary defendants in the petition were the two daughters of Mrs. Sherman and their husbands. She also joined her four grandchildren. They were minors and appeared by guardian ad litem. She joined all parties in possession of various properties, including plaintiffs, who were in possession of the farm as tenants. She also joined all unknown defendants in the manner provided by statute. Service was made upon residents of Iowa by personal service. It was made upon all other defendants by publication. The two daughters and their husbands were nonresidents, but entered appearance. Copy of the original

notice, with petition attached, was mailed as provided by statute to all known nonresident defendants. No question was raised by appellants as to service of original notices, nor to the jurisdiction of the court as to subject matter or parties.

Mrs. Sherman secured the decree quieting title on August 5, 1959. She immediately listed the farm for sale and on August 20, 1959, a real-estate contract was entered into with the plaintiffs, her tenants on the farm, for sale of the farm for $36,000. They paid $2000 cash and agreed to pay $4000 more on the principal February 20, 1960. After 1960 they agreed to pay $1000 on March 1st of each year on the principal, together with interest at 5% on any unpaid balance.

One of the provisions of the contract was that defendant should deliver abstract to plaintiffs for examination, showing merchantable title. The abstract of title was extended to date and delivered to plaintiffs. Their attorney objected to the title, alleging that the quieting-title action did not place the fee title in defendant.

They alleged in their petition that the claim of change in the will, clearly outlined in the quieting-title proceeding, was fraudulent and was not directed to the attention of the court at the time the decree was signed. They contend this constituted extrinsic fraud. Plaintiffs thereupon instituted this action for rescission, and for return of their deposit of $2000.

In the decree in the quieting-title case the trial court stated:

"Thereupon, this cause is called for trial and proceeds to hearing, and the Court having heard the evidence and proofs of the parties and being fully advised and satisfied in the premises finds that the allegations of Division I of said Petition are true and correct and that Frank L. Williams died seized of the real estate hereinafter legally described, he dying testate, leaving a Last Will and Testament, which Last Will and Testament in its original form as signed, published and declared by said Testator contained therein a paragraph as follows: 'IV. I give, devise and bequeath to my said wife the use, and income of all the real estate that I may die seized of to have and to hold during her natural lifetime, from and after the decease of my said wife than *any and all of the real estate to go to my only*

*daughter Lillian M. and her heirs forever.'* That after the signing of said Last Will and Testament, however, portions of said Last Will and Testament were erased and the Will changed to read as follows:

" 'IV. I give, devise and bequeath to my said wife the use, and income of all the real estate that I may die seized of to have and to hold during her natural lifetime, from and after the decease of my said wife than any and all of the real estate to go to my only daughter *Lilliam M. to have and to hold during her natural lifetime, to go to her heirs thereafter.'*

"That said change in said Last Will and Testament was not made in the manner and method dictated by the laws and statutes of the State of Iowa and that said purported change was ineffective and void and that the Lillian M. named in said Last Will and Testament is one and the same person as Lillian M. Sherman, Plff. herein, and that by reason thereof the said Lillian M. Sherman, Plff. herein, is the absolute and unqualified owner in fee simple absolute of the premises hereinafter legally described, * * *." (Emphasis ours.)

Appellants fall into error by their contention that the allegation concerning failure of the trial court to consider the change of will matter constitutes extrinsic fraud, rather than intrinsic fraud.

While not controlling, we have a right to take notice of the fact that the trial Judge who rendered the quieting-title decree, was the same Judge who sustained the motion to dismiss the case at bar. Whatever the attorneys for the respective parties may say, pro and con, in pleadings and argument, we have the right to, and do, assume that the trial court carefully considered the question in the instant case before sustaining the motion. While the case is triable de novo, this is entitled to weight.

This leads us to consideration of the question as to what is extrinsic fraud and what is intrinsic fraud. The question has many times been before the courts of this state, of other states and of the Federal Court. Tucker v. Stewart, 121 Iowa 714, 716, 97 N.W. 148, 149; Graves v. Graves, 132 Iowa 199, 109 N.W. 707, 10 L. R. A., N. S., 216, 10 Ann. Cas. 1104; Wood v.

Wood, 136 Iowa 128, 113 N.W. 492, 12 L. R. A., N. S., 891, 125 Am. St. Rep. 223; Tollefson v. Tollefson, 137 Iowa 151, 154, 114 N.W. 631; Bradbury v. Wells, 138 Iowa 673, 115 N.W. 880, 16 L. R. A., N. S., 240; Aschan v. McDermott, 164 Iowa 750, 145 N.W. 524; Sudbury v. Sudbury, 179 Iowa 1039, 162 N.W. 209; Hewitt v. Blaise, 202 Iowa 1114, 211 N.W. 481; Doyle v. Dugan, 229 Iowa 724, 731, 295 N.W. 128, 130, 131; Reimers v. McElree, 238 Iowa 791, 28 N.W.2d 569; Scheel v. Superior Manufacturing Co., 249 Iowa 873, 89 N.W.2d 377; 49 C.J.S., Judgments, section 372b(2).

An early case, and one which has been often cited and used as precedent, is United States v. Throckmorton, 98 U. S. 62, 65, 66, 25 L. Ed. 93, 95. The court said: "* * * in cases where, by reason of something done by the successful party to a suit, there was in fact (a) no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by (b) keeping him away from court, (c) a false promise of a compromise; or (d) where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or (e) where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or (f) where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. * * *

 "On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because (a) it was founded on a fraudulent instrument, or (b) perjured evidence, or (c) *for any matter which was actually presented and considered in the judgment assailed.* * * * 'in general, the court will not go again into the merits of an action for the purpose of detecting and annulling the fraud.'" (Letters in parentheses and emphasis supplied.)

In Iowa, a leading case, and one somewhat identical with

the case at bar, is Reimers v. McElree, supra. Joseph L. McNay died early in 1908, testate. His widow was Annie E. McNay. They had no children. She was the administratrix of his estate. The case involved a farm of 240 acres in Pottawattamie County which, under his will, was left for life to his widow and thereafter to his brothers and sisters. Late in 1908 Annie E. McNay filed a quieting-title suit, claiming that she was the absolute owner by reason of having purchased the farm from her husband in 1900 for $14,000. She claimed she gave the deed to her husband to record, which he never did.

The action to cancel the judgment was by the heirs of Joseph L. McNay, deceased, against the beneficiaries under the will of Annie E. McNay. She had executed a will leaving the farm to her heirs after the conclusion of the quieting-title suit. The elements of extrinsic fraud alleged by plaintiffs were: (a) That there was no evidence Annie had ever purchased the property from her husband. (b) That as administratrix of his estate she listed the 240-acre farm in the inventory as his property. (c) That although she was constantly in touch with his heirs, who lived in Omaha, nevertheless she never told them anything about the quieting-title action, and instead of publishing the original notice in Council Bluffs, where they might see it, she had it published in Minden, a small town in Pottawattamie County twenty miles east of Council Bluffs.

The trial court rendered decision in favor of plaintiffs, *which was reversed by this court.* In the case we stated at page 796 of 238 Iowa, page 572 of 28 N.W.2d: " '* * * acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.' * * * Even assuming that they constitute fraud, which we do not so hold, still they are not 'matters dehors the record' * * *."

A recent case clearly analyzing the distinction between extrinsic and intrinsic fraud is Scheel v. Superior Manufacturing Co., supra. It referred to the Throckmorton case as a leading precedent on what is extrinsic fraud. Quoting from the Scheel

case (page 882 of 249 Iowa) : "It is not every case of fraud in obtaining a judgment that will justify relief therefrom. The time-honored rule is that the fraud must be extrinsic or collateral to the matter first tried, and not fraud in a matter on which the judgment was rendered. * * *."

We have held in several cases that if the court had jurisdiction of both the person and the subject matter the judgment is conclusive against collateral attack, even if it be erroneous. Allen v. First National Bank of Rockford, 191 Iowa 492, 180 N.W. 675; Ferguson v. Connell, 210 Iowa 419, 230 N.W. 859; Watt v. Dunn, 236 Iowa 67, 17 N.W.2d 811; Reimers v. McElree, supra.

Probate does not foreclose an action based on extrinsic fraud, if it exists. It only decides publication and due execution. In re Will of Tinsley, 187 Iowa 23, 174 N.W. 4, 11 A. L. R. 826; Maloney v. Rose, 224 Iowa 1071, 277 N.W. 572.

In the case at bar the fraud, if any, the existence or absence of which we do not decide, clearly inheres in the quieting-title decree. Appellants' contentions are so wrapped up in the pleadings, evidence and the decree that they cannot be called extrinsic.

We hold the abstract shows fee simple and merchantable title to the 180-acre farm involved in this case, in Lillian M. Sherman, appellee.

Since we are affirming, the motion of appellee to dismiss only raises a moot question, and we give it no consideration.

The dismissal of the case by the trial court is approved and affirmed.—Affirmed.

All JUSTICES concur.